[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11227
_____

D.C. Docket No. 1:09-cv-23494-PCH

OLEM SHOE CORPORATION,
a Florida corporation,

Plaintiff - Counter
Defendant –Appellee,

ROBERT OLEMBERG,
ISAAC OLEMBERG,
NIEVES OLEMBERG,

Plaintiffs,

versus

WASHINGTON SHOE CORPORATION,
a Washington corporation,

Defendant - Counter
Claimant – Appellant.

_____

No. 12-11356
_____

D.C. Docket No. 1:09-cv-23494-PCH

OLEM SHOE CORPORATION,
a Florida corporation,

Plaintiff - Counter
Defendant - Appellant,

ROBERT OLEMBERG, et al.,

Plaintiffs - Counter
Defendants,

versus

WASHINGTON SHOE CORPORATION,
a Washington corporation,

Defendant - Counter
Claimant - Appellee.

_____

No. 13-14728
_____

D.C. Docket No. 1:09-cv-23494-PCH

OLEM SHOE CORPORATION,
a Florida corporation,

Plaintiff - Counter
Defendant - Appellant,

ROBERT OLEMBERG, et al.,

Plaintiffs - Counter
Defendants,

versus

WASHINGTON SHOE CORPORATION,
a Washington corporation,

Defendant - Counter
Claimant - Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(January 12, 2015)

Before MARTIN, Circuit Judge, and EATON,[*] Judge, and HINKLE,[**] District
Judge.

EATON, Judge:

In this copyright case, Washington Shoe Company[1] seeks reversal of the

District Court's summary judgment ruling that Olem Shoe Corporation did not

willfully infringe its copyrights.  By its cross-appeal, Olem seeks reversal of the

_____

[*] Honorable Richard K. Eaton, United States Court of International Trade Judge, sitting
by designation.

[**] Honorable Robert L. Hinkle, United States District Judge for the Northern District of
Florida, sitting by designation.

[1] Although the caption for this case and the docket refer to "Washington Shoe
Corporation," Washington Shoe, in its corporate disclosures and other papers, refers to itself as
"Washington Shoe Company."

Court's holding that it infringed Washington Shoe's copyrights, although not willfully.  Olem also asserts that the District Court abused its discretion by denying its Rule 60(b)(3) motion for relief from the judgment and its related Rule 56(h) motion for sanctions.

Because we find no error in the District Court's holdings, we affirm.

## I.

Washington Shoe designs and sells women's rain boots, including the Zebra Supreme boots and the Ditsy Dots boots.[2]  In the Fall of 2009 and early 2010, counsel for Washington Shoe sent Olem cease-and-desist letters claiming infringement of copyrights for the designs of Washington Shoe's Zebra Supreme and Ditsy Dots boots.  Although the letters were accompanied by photographic representations of the boots, they did not identify, by registration number, the copyrighted designs themselves.  After receiving the first letter, Olem contacted its intellectual property counsel, who then wrote Washington Shoe's counsel

---

[2] In addition to claiming copyright protection for the designs of these two boots, Washington Shoe claims rights for its Rose Zebra Supreme design, the parent work of the Zebra Supreme design.  Although the District Court ultimately granted summary judgment to Washington Shoe with respect to copyright infringement of both the Zebra Supreme and Rose Zebra Supreme designs, because Washington Shoe could not "show actual damages/profits as a result of or attributable to an infringement of Rose Zebra Supreme independently," the District Court treated the two designs as "one work" for purposes of awarding damages.  Here, we similarly treat the two designs as one work, "Zebra Supreme," because, as the District Court stated, "infringement of the Rose Zebra Supreme design was based on the infringement of . . . Zebra Supreme."

attempting to identify the designs that Washington Shoe claimed to have

copyrighted:

> With respect to the merits of your client's claims, however, you have provided us very little information to assess them and advice [sic] our client.  While you have enclosed to your letter four pictures, there is little else.  For example, we do not have a copyright certificate under which you would be claiming your client's exclusive copyright rights nor a description of the features of the alleged product trade dress that have acquired secondary meaning and thus become protectable.
>
> We will appreciate receiving more information regarding your client's claims so we can formulate a meaningful response to your letter.

On November 9, 2009, Olem received a response from Washington Shoe

identifying the copyright registration certificate number only for the Ditsy Dots

design.  Absent from the response was a sample of the copyrighted design.  "In

abundance of caution," Olem cancelled a shipment of its polka dotted boots and

then, after identifying "a zebra-like stripe boot design from the same supplier that

had supplied [its] polka dots boot design," and "to prudently avoid problems, Olem

voluntarily stopped selling [its] zebra-like stripe boot design."  After learning that

the United States Copyright Office could not locate the work submitted with the

application for the Ditsy Dots design copyright registration, Olem filed an action

for a declaration of non-infringement of copyrights and Washington Shoe

counterclaimed to obtain relief for copyright infringement and other state and

federal claims.  Thereafter, on November 10, 2010, Washington Shoe filed

corrective supplementary copyright registrations to address issues raised by Olem, and by an advisory opinion issued by the Copyright Office, with respect to both the Ditsy Dots and Zebra Supreme designs.

On summary judgment, the District Court dismissed all claims against Olem except for those for copyright infringement. As to those claims, the Court granted summary judgment to Washington Shoe for copyright infringement, but granted summary judgment to Olem on Washington Shoe's claims of willful copyright infringement. Following a trial on damages, the jury returned a verdict in Washington Shoe's favor for $27,395.40, of which $6,334.34 was for infringement of the Zebra Supreme work and the remainder was attributable to infringement of the Ditsy Dots design.

Washington Shoe appealed the judgment to this Court and Olem cross-appealed. While the appeals were pending, Olem filed its motions for relief from the judgment and for sanctions. The appeals were then stayed pending the outcome of Olem's motions. The District Court denied Olem's motions on September 16, 2013, Olem appealed that denial on October 15, 2013,[3] and the stay

---

[3] Although Olem also includes the Magistrate Judge's report and recommendation and the Order Denying Motion to Strike in its notice of appeal, it does not address them in the arguments put forward in its brief, aside from its point that because "the Magistrate Judge did not conduct an evidentiary hearing to determine whether the declarations were the product of carelessness or a 'conscious scheme to mislead the Court[,]' [t]here is no evidentiary basis for that conclusion." Because Olem either does not address, or does not support by making arguments and citing authorities, any issues it has with the Magistrate Judge's report and recommendation or the Order Denying Motion to Strike, any such issues are waived. See

was lifted on October 18, 2013.  On November 12, 2013, Olem moved to consolidate its appeals.  On November 27, 2013, the motion was granted and the appeals were consolidated.

## II.

In reaching its decision that Olem had infringed Washington Shoe's copyrights, but had not done so willfully, the District Court noted that neither the parties nor the Court had identified "any Eleventh Circuit cases . . . establishing the standard for willfulness in copyright . . . infringement cases."  Although this Court stated in <u>Cable/Home Communication Corp. v. Network Productions, Inc.</u> that "'[w]illfully,' in the context of section 504(c)(2),[4] means that the defendant '<u>knows</u> his actions constitute an infringement,'" <u>Cable/Home Commc'n Corp. v. Network Prods., Inc.</u>, 902 F.2d 829, 851 (11th Cir. 1990) (emphasis added) (citations omitted) (quoting <u>Broad. Music, Inc. v. Xanthas, Inc.</u>, 855 F.2d 233, 236 (5th Cir. 1988)), it is apparent that, based on the facts of that case, the holding did not reach the question of reckless disregard.

_____

<u>Hamilton v. Southland Christian Sch., Inc.</u>, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it." (citations omitted)).

[4] The <u>Cable/Home Communication</u> Court was referring to section 504 of the Copyright Act of 1976, which is a provision on remedies for copyright infringement.  <u>See</u> 17 U.S.C. § 504. Specifically, section 504(c)(1) provides for the election of statutory damages and subsection (c)(2) allows "the court in its discretion [to] increase . . . award[s] of statutory damages" in cases involving willful infringement.  <u>See id.</u> § 504(c)(1), (2).

Thus, the District Court adopted a rule from the Second Circuit, that willfulness can be found where a party "recklessly disregarded the possibility" that it was infringing a copyright.  See Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 288 (2d Cir. 1999) (quoting Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993)).  In patent cases, however, the standard to establish willful infringement requires a patentee to show "that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent . . . [and to] also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer."  See In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (citing Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 68, 127 S. Ct. 2201, 2215 (2007)); see also Farmer v. Brennan, 511 U.S. 825, 836, 114 S. Ct. 1970, 1978 (1994) ("The civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 34, at 213–14 (5th ed. 1984); Restatement (Second) of Torts § 500 (1965))).  Although the difference between "possibility" and "high likelihood" may not be large, for purposes of this opinion, we adopt the latter standard.  Indeed, this is the standard urged by Washington Shoe:

> Under this standard, in its analysis of the recklessness of the
> infringer, the District Court should have determined if there was an

8

"objectively high likelihood" that Olem infringed, and then determined if the risk was either known to Olem, or so obvious that the risk should have been known to Olem.

Washington Shoe argues that, although the District Court correctly granted summary judgment on the copyright infringement claims, the issue of willfulness should have gone to the jury. The significance of the ruling is that, should Washington Shoe ultimately elect to seek statutory rather than actual damages, those statutory damages could be enhanced by a finding of willfulness.[5] See 17 U.S.C. § 504(c)(2).

We review de novo the District Court's grant of summary judgment, applying "the same legal standards as those that controlled the [D]istrict [C]ourt." Indus. Partners, Ltd. v. CSX Transp., Inc., 974 F.2d 153, 155 (11th Cir. 1992) (citing Martin v. Baer, 928 F.2d 1067, 1070 (11th Cir. 1991)). Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any

_____

[5] Under 17 U.S.C. § 504(a), a copyright owner is entitled to recover the "owner's actual damages and any additional profits of the infringer," or, in lieu of actual damages, the copyright owner may elect to recover statutory damages. "The election between actual and statutory damages is to be made 'at any time before final judgment is rendered'" and "once a timely election is made to receive statutory damages[,] all questions regarding actual and other damages are rendered moot." Jordan v. Time, Inc., 111 F.3d 102, 104 (11th Cir. 1997) (quoting 17 U.S.C. § 504(c)). It follows that, ordinarily, if an election to receive statutory damages is not made prior to final judgment, the election is waived. In this case, however, the parties stipulated, prior to the trial on actual damages, that Washington Shoe would be able to elect statutory damages later, after appeal, if the willfulness determination were to be reversed.

The amount of statutory damages recoverable by the copyright owner is set forth in section 504(c), which provides that "the copyright owner may . . . recover . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Subsection (c)(2) allows "the court in its discretion [to] increase the award . . . to a sum of not more than $150,000" if it finds "that infringement was committed willfully." Id. § 504(c)(2).

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As an initial matter, it is clear that the evidence to which Washington Shoe points does not create a triable issue of fact with regard to actual knowledge that Olem's boots infringed Washington Shoe's copyrights. That is, there is no evidence that Olem knew of Washington Shoe's copyrights and chose to violate them. See Cable/Home Commc'n, 902 F.2d at 851 (holding that statutory award by district court for willful copyright infringement was not an abuse of discretion where there was "no doubt that [the infringer] knew that [the] program within [a] . . . chip was copyrighted and that he not only assisted in the production of pirate chips by giving funds and equipment . . . but also that he openly publicized and encouraged the purchase of these pirate chips as well as others . . . in blatant defiance of the copyright laws"). Further, we also find that the evidence to which Washington Shoe points does not raise a genuine issue of material fact with respect to willful infringement based on reckless disregard.

As to this evidence, Washington Shoe first claims that the District Court should have found that its cease-and-desist letters, the first of which was sent in the Fall of 2009, provide evidence that Olem recklessly disregarded the risk that it was infringing Washington Shoe's copyrights. In effect, Washington Shoe is arguing

that Olem's receipt[6] of the letters gave rise to an inference that Olem willfully

infringed Washington Shoe's copyrights.  We agree with the District Court,

however, that the receipt of the cease-and-desist letters does not create a triable

issue of fact with regard to the question of willfulness because, as Washington

Shoe concedes, "[i]t is . . . uncontroverted that the initial letters did not include

reference to copyright registration numbers, or deposit copies."  Thus, although

Washington Shoe may have claimed that it held the copyrights to the boots'

designs, the initial letters, which had no copyright registration numbers, and the

follow-up letters, which included registration numbers for claimed patents but no

samples of the designs Washington Shoe claimed were infringed, provided nothing

from which Olem could have determined that the claim was legitimate.

In addition, Olem's behavior after receiving the letters—stopping shipments

and contacting Washington Shoe through its attorney to request more

information—demonstrates that it took steps to determine whether Washington

Shoe's assertions were true.  Indeed, as it turned out, Washington Shoe found it

necessary to file supplementary copyright registrations in order to correct issues

with both the Ditsy Dots and Zebra Supreme design copyrights that had been

raised by the advisory opinion issued by the Copyright Office.  Thus, based on

---

[6] While Washington Shoe argues in its brief that "[t]he sending of the cease and desist letters is . . . evidence that Olem knew there [was] someone asserting a copyright against them, and that there may [have been] an infringement issue with the Olem boots," presumably, it is the receipt of the cease-and-desist letters by Olem that arguably constitutes meaningful evidence.

Olem's receipt of the cease-and-desist letters, a reasonable jury could find that

Washington Shoe had asserted a claim of copyright infringement, but could not

find that Olem had sufficient credible information to provide "an objectively high

likelihood" that it was infringing Washington Shoe's copyrights.

     Washington Shoe next contends that the "evidence of . . . similarity,

particularly evidence that the boots are identical, is a signpost that objectively

increases the probability of infringement." Here, however, more than a signpost is

needed. That Olem's boots are similar, indeed, as shall be seen, strikingly similar,

to those of Washington Shoe does not necessarily give rise to the inference that

Olem recklessly disregarded the likelihood that it was infringing Washington

Shoe's copyrights. That is, while striking similarity may be the basis for finding

that a work has been copied, it is not evidence that Olem's state of mind was that

of reckless disregard of the risk that it was violating copyrights when it purchased

and sold the infringing boots. This is because striking similarity can be used as a

substitute for actual evidence of copying, but says little about the state of mind of

the copier, i.e., that it willfully disregarded the rights of a copyright holder. See

Robert Bosch, LLC v. Pylon Mfg. Corp., 719 F.3d 1305, 1322 (Fed. Cir. 2013)

(Moore, J., concurring-in-part and dissenting-in-part) (arguing that, in the patent

context, an "accounting" does not include a determination of willful infringement

because "[a]n 'accounting' entails numerical calculations, not an inquiry into a

party's state of mind in the face [of] an objectively high risk of infringement");

Boisson v. Banian Ltd., 280 F. Supp. 2d 10, 16 (E.D.N.Y. 2003) ("It is Plaintiff's

contention that the striking similarity between the copyrighted quilt and the

infringing quilts warrants a finding of willfulness.  Acceptance of this argument,

however, would turn all infringements into willful infringements, which is clearly

beyond the scope of the law.").

Washington Shoe's assertion that the similarity of Olem's boot designs to

those of Washington Shoe "makes it more likely that the work was copied" is, of

course, true.  Washington Shoe has indicated no authority, however, that supports

its argument that the similarity of the designs is evidence that the copying was

willful.  Generally, establishing a reckless state of mind in a copyright case

requires a showing that the infringer possessed particular knowledge from which

willfulness could be inferred, such as evidence demonstrating that the infringer

was given samples of the copyrighted work prior to producing the infringing work.

See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 112, 113 (2d Cir. 2001)

(finding "a sufficient basis for an inference by the jury that the infringements were

willful" and that "the jury was free . . . to find that [the defendant]'s ignorance was

due to recklessness," given evidence that the defendant had received actual

samples of the plaintiff's jewelry from a store prior to selling jewelry that violated

the plaintiff's copyrights, and that the defendant had knowledge of the plaintiff's

13

product line and "fail[ed] to investigate the possibility of intellectual property violations after" being told its product was similar to the plaintiff's (citations omitted)). Thus, in this case, the similarity between the boots does not create a triable issue of fact with regard to willfulness on the part of Olem.

Washington Shoe also points to Olem's sourcing of its boots from China as evidence of reckless disregard. Washington Shoe thus argues that "[t]he fact that the boots and artwork were not designed by Olem coupled with the fact that the designs and boots were sourced in China increases the probability of infringement," reasoning that "it is . . . well known that China is a source of infringing goods." Although Washington Shoe notes that Olem did not design its boots and purchased them from China, it does not point to any record evidence to substantiate its claim that these facts "increase[] the probability of infringement" such that a jury could infer that Olem acted recklessly. This argument, if effective, would impute reckless disregard to any company purchasing and selling products from China that it did not design itself that turned out to be copyrighted by another. Thus, it is unpersuasive.

Finally, in support of its willfulness argument, Washington Shoe suggests as evidence Olem's "inability to point to any specific existing work . . . on which [its] works were based, created, or otherwise derived." Washington Shoe reasons that "[t]he fact that [Olem] found no existing works increases the probability that the

works are original to Washington Shoe, and hence increases the possibility of infringement." Put another way, Washington Shoe is arguing that a jury could find that, because Olem was unaware of the source of the boots it sold, it should have known that it was infringing Washington Shoe's copyrighted designs, and therefore, Olem willfully infringed. This argument, too, is unpersuasive because it imputes a state of mind of reckless disregard to any party that purchases and sells a product without specific knowledge of the source of its design.

Because there is no evidence in the record indicating that Olem actually knew it was infringing Washington Shoe's copyrights and because the evidence cited by Washington Shoe does not raise a genuine issue of material fact with respect to reckless disregard, the District Court did not err in granting summary judgment to Olem on the issue of willfulness. Accordingly, we affirm as to this issue.

### III.

Following Washington Shoe's willfulness appeal, Olem cross-appealed the District Court's holding that it had infringed Washington Shoe's copyrights. Thereafter, Olem made its 60(b)(3) and 56(h) motions based on alleged misrepresentations in sworn statements[7] filed in support of Washington Shoe's

---

[7] The sworn statements to which Olem refers were made in an affidavit by Karl Moehring, Chief Financial Officer and owner of Washington Shoe, and in a declaration by Robert M. Moehring, president and owner of Washington Shoe. Both Karl and Robert

summary judgment motion.  Fed. R. Civ. P. 60(b)(3); Fed. R. Civ. P. 56(h).

According to Olem, these misrepresentations were relied upon by the District

Court in its finding that Olem had "access" to the Zebra Supreme boots based on

wide dissemination of the boots that had taken place "for years."  The relevance of

this conclusion is that "access," when combined with the District Court's

conclusion that Olem's zebra pattern was "substantially similar" to Washington

Shoe's Zebra Supreme design, was important to the finding of copying[8] in the

District Court's initial summary judgment opinion.

A.

---

Moehring "attested in their declarations that '[t]he Ditsy Dots and Zebra Supreme boots ha[d] been a huge commercial success, selling at national retailers such as Target® stores.'"  "Robert Moehring further stated that '[t]he Zebra Supreme boots ha[d] been available across the country in Target® stores for years.'"

[8] In order to establish copyright infringement, Washington Shoe had to prove, first, that it had ownership of a valid copyright with respect to its works and, second, that Olem copied "constituent elements of the work[s] that [were] original."  See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991) (citing Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 548, 105 S. Ct. 2218, 2224 (1985).  Proof of copying could have been established either by the introduction of direct evidence to that effect or by using indirect evidence to show (1) that Olem had "access" to Washington Shoe's copyrighted works and that Olem's works were "substantially similar" to the copyrighted works or (2) by demonstrating that Olem's works were "strikingly similar" to Washington Shoe's copyrighted works.  See, e.g., Progressive Lighting, Inc. v. Lowe's Home Ctrs., Inc., 549 F. App'x 913, 918 (11th Cir. 2013) (citing Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 824 (11th Cir. 1982)); Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1315 (11th Cir. 2010); Corwin v. Walt Disney Co., 475 F.3d 1239, 1253 (11th Cir. 2007); Palmer v. Braun, 287 F.3d 1325, 1329–30 (11th Cir. 2002) (citing Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265–66 (11th Cir. 2001); Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1214 (11th Cir. 2000)).

16

A finding of copyright infringement requires proof of "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1315 (11th Cir. 2010) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991)) (internal quotation marks omitted). Because the evidence establishes both of these elements, we affirm the District Court's grant of summary judgment to Washington Shoe on the copyright infringement claims.[9]

1.

As an initial matter, we find that Washington Shoe's copyrights for the Ditsy Dots, Zebra Supreme, and Rose Zebra Supreme designs are valid and thus, that the first element of copyright infringement—ownership of a valid copyright—is satisfied.[10] Pursuant to 17 U.S.C. § 410(c),

---

[9] As to the Ditsy Dots and Zebra Supreme designs, the District Court granted summary judgment to Washington Shoe on the copyright infringement claims in its Order on Cross-Motions for Summary Judgment. Summary judgment was later granted to Washington Shoe with respect to the Rose Zebra Supreme design in a separate Order on Supplemental Cross-Motions for Summary Judgment.

[10] Olem argues that Washington Shoe was not entitled to bring its copyright infringement actions, and thus, that Olem is entitled to summary judgment on those claims, because Washington Shoe did not disclose to the Copyright Office that all three designs at issue were created by the modification of prior works, which Olem maintains renders its copyright registrations invalid. In other words, Olem argues that Washington Shoe's copyrights are invalid because all of the preexisting work leading to the designs may not have been disclosed to the Copyright Office. The Copyright Office, however, has construed its statute to require disclosure only when "a substantial amount of the material incorporated in the derivative work is in the public domain or has been registered or published previously." See U.S. Copyright Office, The Compendium of U.S. Copyright Office Practices § 626.01(a) (2d ed. 1984) (amended 1988). This construction merits deference under Skidmore v. Swift & Co., 323 U.S. 134, 65 S. Ct. 161

the certificate of a registration made before or within five years after
first publication of the work shall constitute prima facie evidence of
the validity of the copyright and of the facts stated in the certificate.
The evidentiary weight to be accorded the certificate of a registration
made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c).  Thus, Washington Shoe's certificates of registration create a

rebuttable presumption that the copyrights for its Ditsy Dots, Zebra Supreme, and

Rose Zebra Supreme designs are valid.  See Montgomery v. Noga, 168 F.3d 1282,

1289 (11th Cir. 1999) (citing 17 U.S.C. § 410(c) (1994)) (finding that production

of a certificate of copyright registration gave rise to a rebuttable presumption that

copyright was valid).  Because Olem has failed to show that Washington Shoe's

designs are not protectable, it has failed to rebut this presumption of validity.  See

id. at 1291 (finding that the district court did not clearly err in rejecting the

defendants' argument that a computer program was unprotectable because the

defendants did not meet their burden of showing that modifications the plaintiff

made to the computer program were not sufficiently original to support a valid

copyright in a subsequent version as a derivative work).  This leaves only the

element of copying to be discussed.

2.

---

(1944) as the copyright law is "highly detailed" and it is apparent that the Copyright Office "can
bring the benefit of specialized experience to bear on the subtle questions in this case."  See
United States v. Mead Corp., 533 U.S. 218, 235, 121 S. Ct. 2164, 2175 (2001).  Thus, none of
Washington Shoe's copyrights at issue were rendered invalid because all preexisting work was
not identified.

As to copying, in its initial summary judgment opinion, the District Court found that Olem's boot designs were substantially similar to Washington Shoe's copyrighted designs and that Olem had access to those designs.  "Access requires proof of 'a reasonable opportunity to view' the work in question."  Corwin v. Walt Disney Co., 475 F.3d 1239, 1253 (11th Cir. 2007) (quoting Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1249 (11th Cir. 1999)) (citing Ferguson v. Nat'l Broad. Co., 584 F.2d 111, 113 (5th Cir. 1978)).  In some instances, proof that a copyright holder's work was "widely disseminated" has been held to constitute circumstantial evidence of access.  See, e.g., L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846–47 (9th Cir. 2012) (citing Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482 (9th Cir. 2000)); Boisson v. Banian, Ltd, 273 F.3d 262, 270 (2d Cir. 2001) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 13.02[A] (2001)); Peel & Co. v. Rug Mkt., 238 F.3d 391, 397 (5th Cir. 2001); Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984) (citations omitted).

When determining that Olem had access to Washington Shoe's designs, the District Court considered and relied on the "evidence of wide dissemination" presented by Washington Shoe in the sworn statements.  The District Court noted that, by the sworn statements, Washington Shoe had offered testimony that the "'Ditsy Dots and Zebra Supreme [boots had] been a huge commercial success,

19

selling at national retailers such as Target stores[,]' and [that] Zebra Supreme boots [had] been available in Target stores 'for years.'"  For Olem, it was the finding of access, through sales at Target stores, that led the District Court to find copyright infringement of Washington Shoe's Zebra Supreme boot design.

By its Rule 60(b)(3) and 56(h) motions, Olem claimed that, by presenting testimony in the form of sworn statements that the Zebra Supreme boots had been sold "in Target® stores for years," Washington Shoe had intentionally and fraudulently made misrepresentations to the District Court in bad faith and that those misrepresentations had "singularly permitted the [District] Court to find access based upon wide dissemination."  Olem argued that, as a result of Washington Shoe's misrepresentations, it was entitled to relief from the final judgment and the summary judgment orders, and it further sought sanctions, including attorney's fees and costs, dismissal of Washington Shoe's copyright claims, and entry of judgment in its favor.[11]

The District Court referred Olem's motions to a Magistrate Judge who held a non-evidentiary hearing and issued a report and recommendation.  The Magistrate Judge found "no evidence of a deliberate scheme by Washington Shoe to . . . create [a] misrepresentation."  Nonetheless, the Magistrate Judge

---

[11] Olem also urged the District Court to hold Washington Shoe in contempt "and that the Court award such other relief as it deems equitable and just."

recommended that the District Court review its summary judgment ruling to determine if the record supported a finding of wide dissemination.

After receiving the Magistrate Judge's report and recommendation, the District Court considered Olem's Rule 60(b)(3) and Rule 56(h) motions. Importantly, in its opinion, the District Court, in addition to deciding these motions on their own, treated them as a motion to reconsider its initial summary judgment opinion. Thus, the District Court took another look at the reasons for its finding that Olem had infringed Washington Shoe's copyrights.

In doing so, the District Court first noted that it continued to find access based on wide dissemination. As to Olem's misrepresentation claims with respect to the availability of the Zebra Supreme design "for years," the District Court found that a purchase order was "indicative of a sale date prior to . . . September 28, 2009"[12] and, because the sworn statements were dated March 11, 2010 and March 7, 2011, it was at least some evidence that the "for years" statement was not false.[13]  The Court also addressed the alleged misrepresentation regarding Target stores, and found that, "[a]lthough the Zebra Supreme boot was not available at

---

[12] At trial, relying on documented sales of Zebra Supreme boots to the retailer Target, Karl Moehring testified that Washington Shoe began selling the Zebra Supreme design on September 28, 2009, providing the basis for Olem's claim that the "for years" statements, made March 11, 2010 and March 7, 2011, were false.

[13] The sworn statement of Robert Moehring was served "March 11, 2010, approximately five months after" September 28, 2009, and Karl Moehring's affidavit "was dated March 7, 2011, approximately one year . . . after" Robert Moehring's sworn statement.

21

Target brick-and-mortar stores, . . . there was access through wide dissemination based on the availability of the Zebra Supreme boot at Target.com."[14]  Thus, the District Court reaffirmed its finding of access.

The District Court next considered its findings on summary judgment relating to the striking similarity between the designs.  Here, the Court noted that, in its initial summary judgment opinion, it had found "that the patterned designs on the face of the boots [were] indeed strikingly similar," but did "not reach this conclusion as a matter of law" because, (1) given its finding of access, it did not need to find striking similarity, only substantial similarity, in order to find that the designs had been copied, and (2) it mistakenly concluded that expert testimony was required to find striking similarity as a matter of law.

After taking a second look at the applicable law and at the boots themselves, however, the District Court concluded that it had been correct when it observed in a footnote in its initial summary judgment opinion "that the Zebra Supreme boots and Olem['s] zebra pattern boots were strikingly similar, but incorrect that the Court was not competent to find striking similarity in the absence of reliable expert testimony."  Based on this reconsideration, the District Court then found that the

---

[14] The District Court noted that "[t]he inclusion of the Google maps screenshot" showing Target brick-and-mortar store locations submitted by Washington Shoe in support of its claim that the Ditsy Dots and Zebra Supreme boots were widely disseminated "was relevant to the issue of access as it pertained to the Ditsy Dots design because the Ditsy Dots boots, unlike the Zebra Supreme boots, were sold at Target brick-and-mortar stores."  Thus, because the Ditsy Dots boots actually were sold at Target brick-and-mortar stores, the claimed misrepresentations were relevant only to the Court's finding as to the Zebra Supreme design.

Zebra Supreme boots and Olem's zebra pattern boots were strikingly similar as a matter of law and thus that copying could be presumed.  See MPD Accessories B.V. v. Urban Outfitters, No. 12 Civ. 6501(LTS)(KNF), 2014 WL 2440683, at *6 (S.D.N.Y. May 30, 2014) ("Where works are strikingly similar, separate proof of access for copying is unnecessary.").  Thus, the District Court concluded that "a finding of access [was] unnecessary because the Zebra Supreme boots and Olem['s] . . . zebra pattern boots [were] strikingly similar."

We affirm the District Court's holding that it was competent to make a finding of striking similarity[15] and we find that Washington Shoe, with regard to both its Ditsy Dots design and its Zebra Supreme design, has "establish[ed] copying by demonstrating that [its] original work[s] and the . . . infringing work[s] are strikingly similar."  Corwin, 475 F.3d at 1253 (quoting Calhoun v. Lillenas Publ'g, 298 F.3d 1228, 1232 n.6 (11th Cir. 2002)) (internal quotation marks omitted).

"Striking similarity exists where the proof of similarity in appearance is 'so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.'"  Corwin, 475 F.3d at 1253

---

[15] See Jenkins v. Jury, No. 5:07-cv-133-Oc-GRJ, 2009 WL 1043965, at *4 & n.24 (M.D. Fla. Apr. 16, 2009) (finding sculptures "strikingly similar" and noting that "expert testimony . . . [was] unnecessary . . . because this [was] not a 'technical' field in which the trier of fact [would] not [be] able to make [such a] determination" (internal quotation marks omitted) (quoting Kent v. Revere, No. 84-798-CIV-ORL-18, 1985 WL 6453, at *7 (M.D. Fla. Oct. 28, 1985))).

(quoting Selle, 741 F.2d at 901) (citing 4 M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.02[B] (2005)).  Where two works are "essentially" or "virtually identical," they are strikingly similar and, thus, the copying element is satisfied. See Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 62 (1st Cir. 2000) (finding sweater design had been copied where "[t]he geometric patterns, the stitching, and the number and arrangement of the buttons all appear[ed] identical" and "[m]any of the patterns in the [infringing] sweater [were] strikingly similar to those found in the intricate [copyrighted] design, and the patterns [were] arranged in a similar order"); Kent v. Revere, No. 84-798-CIV-ORL-18, 1985 WL 6453, at *7 (M.D. Fla. Oct. 28, 1985).  That being said, "works need not be exactly identical to be strikingly similar."  See Kent, 1985 WL 6453, at *7 (emphasis added) (citing Testa v. Janssen, 492 F. Supp. 198, 203 (W.D. Pa. 1980)).

In its initial summary judgment opinion, the District Court held that the Ditsy Dots design had been copied based on findings of access and substantial similarity.  The Court first found access based on wide dissemination because, "[g]iven that [the] Ditsy Dots . . . boots were sold nationwide at stores such as Target and could have been viewed at trade shows that both companies attended, . . . . Olem['s] employees had a reasonable opportunity to view the boots . . . ."  As to

similarity, the Court determined that Olem's dots design was substantially similar[16] to the Ditsy Dots design because "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."  See Baby Buddies, 611 F.3d at 1315 ("To determine whether an allegedly infringing work is substantially similar to a copyrighted work, we ask whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" (quoting Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1224 (11th Cir. 2008)) (internal quotation marks omitted)).  In making this determination, the District Court found that "no features of Olem['s] . . . dots pattern [were] recognizably distinguishable from Washington Shoe's Ditsy Dots pattern" and noted that, "[t]o the naked eye, it appear[ed] that Olem . . . use[d] proportionately equivalent big dots and small dots that [were] the same as those used by Washington Shoe."  See Appendix infra.  Having examined photographs of the boots, we agree, and further find that Olem's dots design and Washington Shoe's Ditsy Dots design are "virtually identical" and thus strikingly similar.  Therefore, whether based on a finding of access combined with substantial similarity or on a finding that the boot designs are strikingly similar, we affirm the

---

[16] The District Court did not later reconsider its finding that the Ditsy Dots boots had been copied by Olem based on access and substantial similarity.  Thus, the District Court did not find that Olem's dots design was strikingly similar to Washington Shoe's Ditsy Dots design.  Presumably, this was because the allegedly misleading sworn statements only implicated the Zebra Supreme design and thus did not disturb the Court's finding of access with regard to the Ditsy Dots design.  Upon inspection of the two designs, we note, however, that Olem's dots design is strikingly similar to Washington Shoe's Ditsy Dots design.  See Appendix infra.

District Court's finding that Olem copied the Ditsy Dots design.  See Appendix infra.

As to the Zebra Supreme design, the District Court, in its initial summary judgment opinion, determined that it had been copied by Olem as a result of its access and substantial similarity findings.  Subsequently, in its order denying Olem's motions for relief from judgment and for sanctions, the District Court continued to find that the Zebra Supreme design had been copied based on access and substantial similarity, but further found copying of the Zebra Supreme design based on striking similarity, as well.

With respect to the Zebra Supreme design, in its initial summary judgment opinion, the District Court found Olem's zebra pattern substantially similar to Washington Shoe's design.  The District Court did so after comparing "undisputed photographs" of both companies' designs from four different angles and observing "distinct patterns common to both compan[ies'] boot designs," which the Court described as follows:

> From the toe pointing right view, both show a black triangular shape at the top of the boot resembling an arrowhead pointing left.  Moving vertically down the boot below the arrowhead, both show a series of alternating black and white wavy lines of different thicknesses. Continuing to move down vertically, this series of lines leads into a wavy elliptical shape in the center of the boot.  Immediately below, there is another series of alternating black and white wavy lines of different thicknesses.   Immediately below these lines is a black diamond-shaped object enclosing another ellipse.  Immediately below

the diamond shape, a final series of wavy lines follow vertically down
until reaching the toe of the boot.

The District Court then noted that "the distinguishing characteristics of the pattern

such as the arrowhead, diamond[,] and ellipse are distinct and common to each

from the front and toe pointing right views."  The Court thus found that the two

designs were substantially similar because "an average lay observer would

recognize the alleged copy as having been appropriated from the copyrighted

work."

When deciding Olem's Rule 60(b)(3) and 56(h) motions, however, the

District Court reconsidered its similarity finding from its initial summary judgment

opinion and found Olem's zebra design to be strikingly similar to Washington

Shoe's Zebra Supreme design because, given that "the two boots [were] virtually

identical, the commonalities that supported a finding of substantial similarity also

support[ed] a finding of striking similarity."

We find that Olem's zebra design is indeed strikingly similar to Washington

Shoe's Zebra Supreme design.  A comparison of the photographs of the boots

reveals that Olem's design is "virtually identical" to that of Washington Shoe, and

as such we find that Olem has copied Washington Shoe's Zebra Supreme design.

See Appendix infra.  Thus, as with the Ditsy Dots boots, there is no genuine issue

of material fact as to whether Olem copied Washington Shoe's copyrighted design

and, therefore, with respect to both boot designs, summary judgment on the issue of copying was appropriate.

## B.

As to Olem's motion for relief from the judgment, we review the denial of a Rule 60(b)(3) motion for abuse of discretion.  Cox Nuclear Pharmacy, Inc. v. CTI, Inc., 478 F.3d 1303, 1314 (11th Cir. 2007) (citing Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1287 (11th Cir. 2000)).  To successfully bring a Rule 60(b)(3) motion, the movant must "prove[] by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct" and "must also show that the conduct prevented the losing party from fully and fairly presenting his case or defense."  Frederick, 205 F.3d at 1287 (citing Scutieri v. Paige, 808 F.2d 785, 794 (11th Cir. 1987); Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978)).

The issue on appeal is whether the District Court abused its discretion by denying Olem's Rule 60(b)(3) motion for relief from the judgment.  The motion was premised on the alleged misrepresentations in the sworn statements of Robert and Karl Moehring.  Because the misrepresentations in the sworn statements, if, in fact, there were any, were unnecessary to the District Court's finding of infringement, we agree with the Court that Olem did not show either that the verdict was obtained through misrepresentation or that it was prevented from fully

and fairly presenting its case.  In other words, because the Court, after taking a

second look, found infringement of the Zebra Supreme design based on striking

similarity, the sworn statements had no bearing on the outcome of the case.

Therefore, we find that the District Court did not abuse its discretion, and affirm its

denial of Olem's Rule 60(b)(3) motion.

## C.

Although we have not previously stated the appropriate standard of review

for the denial of a Rule 56(h) motion for sanctions, other courts have applied an

abuse of discretion standard in this context.  See, e.g., Hunt v. Branch Banking &

Trust Co., 480 F. App'x 730, 732 (4th Cir. 2012) (citing Miltier v. Beorn, 896 F.2d

848, 855 (4th Cir. 1990)).  Further, we review decisions concerning other Rule 56

motions for abuse of discretion.  Jackson v. Cintas Corp., 425 F.3d 1313, 1316

(11th Cir. 2005) (citing Fla. Power & Light Co. v. Allis Chalmers Corp., 893 F.2d

1313, 1315 (11th Cir. 1990)) (applying abuse of discretion standard to denial of

discovery under Rule 56(f)).  Thus, the denial of Olem's Rule 56(h) motion for

sanctions will be reviewed for an abuse of discretion.

We find that the District Court did not abuse its discretion by declining to

impose sanctions on Washington Shoe because the Court reasonably concluded,

based on evidence presented by Washington Shoe, that Olem had not conclusively

proven that the "for years" statement was false.  Additionally, although the "Target

stores" statements turned out to be false, the District Court reasonably exercised its discretion in concluding that the statements had not been submitted in bad faith and that there was access to the Zebra Supreme design through the availability of the Zebra Supreme boot at Target.com.  Accordingly, we affirm the District Court's denial of Olem's Rule 56(h) motion for sanctions.

IV.

We affirm the District Court's grant of summary judgment on the copyright infringement claims in all respects.  We also affirm the District Court's denial of Olem's motions for relief from the judgment and for sanctions.

**AFFIRMED.**

## APPENDIX



OLEM SHOE EXHIBIT

OLEM – ZEBRA



WASHINGTON SHOE EXHIBIT

WASHINGTON SHOE – ZEBRA SUPREME



OLEM SHOE EXHIBIT

OLEM SHOE – DOTS



WASHINGTON SHOE EXHIBIT

WASHINGTON SHOE – DITSY DOTS